Chittenden, J.
This action originated in the city and justice court of the city of Toledo and was for the recovery of $21, the amount alleged to be due for demurrage on five cars of grain. In that court judgment was rendered in favor of the plaintiff for the full amount claimed. Upon appeal to the common pleas court a jury was waived and the cause was submitted to the court, and a judgment was rendered in favor of the plaintiff for the sum of $5. The railroad company now seeks to reverse this judgment.
There is no dispute as to the. $5 demurrage charge upon one of the five cars. The other four cars were consigned to Toledo with instructions to give notice to The J. F. Zahm Company, of which firm the defendants were the constituent members. These cars arrived on July 17th and notice of their arrival was given to ’ The J. F. Zahm Company on July 18th, whereupon that company notified the plaintiff to deliver the cars to The National Milling Company which was located on the tracks of The Wheeling & Lake Erie Railroad Company. It appears that because of an accumulation of cars upon the tracks of The National Milling Company, The Wheeling and Lake Erie Railroad Company had promulgated an embargo upon grain destined to that company, notice of which embargo had been given to the various railroad companies on July 18th. After receiving the switching instructions from The J. F. Zahm Company the plaintiff notified that *46 company of the embargo and of its inability to deliver cars to The Wheeling & Lake Erie Railroad Company for The National Milling Company, because of the same. No further orders for the disposition of the grain were given the plaintiff and the cars were held until July 25th, when the embargo was lifted and delivery was made in accordance with the instructions.
The legal question presented is whether or . not, under such state of facts, the defendants are subject to the demurrage charge. It appears from the evidence that the rule under which the demur-rage charges in question accrued was on file with the Interstate Commerce Commission and the Railroad Commission of Ohio, now the Public Utilities Commission, and was as follows:
“When cars are held' by a road for delivery within a switching district and can not be received by the switching line owing to the disability of the consignee, notice must be promptly given by the switching line to the road holding the cars in order that it may give notice to the consignees.
“The agent of the holding road will give prompt notice as per car demurrage rule 2-b-l, and explanations thereto.”
It is shown by the evidence that the notice required by this rule was given. It is claimed that this rule is to be read in the light of the American Railway Association interpretations. It is asserted by the defendants that the evidence fails to show that these interpretations were on file with the state commission and the interstate commission. We find, however, that under the stipulation with reference to the evidence of R. R. Harris, super *47 intendent of freight transportation, and the letters signed by him in pursuance, of such stipulation, it fairly appears that the interpretations were on file with both commissions. ' What the effect of the interpretations would be if they were not on file need not be considered in view of our finding from the evidence that they were on file. Having been approved by both commissions and being on file with them, we find that they are to be read with the rules as the law governing the case. The interpretation provides:
“It also applies to cars held on a carrier line within a switching district, consigned to a point on the switching line within such district, which can not be received on account of disability of consignee. The carrier line must in all cases give notice in writing to the consignee of all cars so held. Time will be computed in accordance with Rule 3 (b) following.”
No question is made in the case as to the computation of the time of the demurrage at the rate of one dollar per day for each day after the expiration of the free time allowance.
We think that these rules and the interpretations cover this case and that the plaintiff is entitled to recover. The demurrage is not to be looked upon entirely as a penalty, but it is rather in the nature of a- rental for the use of cars for storage during the time that the consignee is unable to care for their contents. This is not only a just provision, but it has a tendency to make consignees diligent in unloading and releasing cars for use. As was said in the case of The B. & O. Rd. Co. v. *48 Luella Coal & Coke Co., 74 W. Va., 289, 81 S. E. Rep., 1044:
“The law imposes upon railroad companies the duty of supplying the shipping public with prompt and proper service. They are bound to furnish cars, and if the owner of goods shipped does not perform his duty in unloading within a reasonable time, the public, as well as 'the carrier, may be greatly inconvenienced.”
The extent to which the Interstate. Commerce Commission, and the courts as well, have upheld the demurrage charge is illustrated by the case of Swift & Co. v. The Hocking Valley Ry. Co., 93 Ohio St., 104, and the cases cited in the opinion in that case. A case very much in point is that of New Jersey Zinc Co. v. Central Railroad Company of New Jersey, 36 I. C. C., 289, decided October 12, 1915.
We hold that the court was in’error in finding for the defendants upon the four cars in question, and the judgment of the court of common pleas will therefore be reversed. Upon the undisputed facts disclosed by the evidence this court will proceed to enter the judgment that should have been entered in the common pleas court, in favor of the plaintiff and against the defendants, for the full amount of the claim.

Judgment reversed, and judgment for plaintiff in error.

Richards and Kinkade, JJ., concur.